## PROCTOR *v.* BRILL and others.*

(*Circuit Court, E. D. Pennsylvania.* October 15, 1880.)

1. PATENT—SEPARATE CLAIMS—DAMAGES FOR INFRINGEMENT WHERE NO SEPARATE LICENSE FEE HAS BEEN ESTABLISHED.—In an action at law for infringement of a patent containing two claims, if the evidence shows that the patent is valid as respects one claim only, and the plaintiff has established no license fee for the separate use of the device covered by such claim, he can recover only nominal damages.

2. SAME—IMPROVEMENT IN POLE COUPLING—VALIDITY.—Letters patent No. 21,026, for improvement in pole coupling for railroad cars, sustained as to the device included in the second claim, viz., a method of coupling the pole so that its weight shall be sustained by the car instead of bearing upon the horses.

This was an action at law to recover damages for the infringement of letters patent No. 21,026, for an improvement in pole coupling for railroad cars. The patent was issued in 1858 to Blancy E. Sampson, was re-issued in 1860, and was, in 1872, extended for seven years. It contained two claims—*First,* an open jaw for coupling a street-car pole to the car; and, *second,* a method of supporting a street-car pole so as to take the weight of the pole off the horses' necks. The plaintiff testified that he had an established license fee of $10 a car for the use of the open jaw covered by the first claim alone, and a license fee of $50 for the use of the devices included in both claims; but that he had never collected any license fee for the use of the pole-support device alone, covered by the second claim.

Evidence was given by the defendants of prior use of the devices included in both claims, in New York, Jersey City, Troy, and other places; and of the device covered by the first claim, in Philadelphia. Rebutting testimony was given by the plaintiff as to the prior use of the device covered by the second claim, but not as to the prior use of the device covered by the first claim.

After the evidence was in, the plaintiff's counsel stated to the jury that he abandoned the first claim.

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

*Nathan H. Sharpless*, for plaintiff.

*Walter George Smith* and *Francis Rawle*, for defendants.

BUTLER, D. J., (*charging jury.*) On the twenty-seventh of July, 1858, letters patent were issued to Blaney E. Sampson, re-issued in February, 1860, and, upon their expiration in July, 1872, they were extended for a further term of seven years. Of these letters patent the plaintiff, Mr. Proctor, became the owner by assignment, as well for the period covered by the extension as that for which they were originally issued.

This patent, as you have learned, is for an improvement in pole coupling for railroad cars, which is described by the inventor to consist in so applying or constructing the car pole that it shall be sustained at the proper height to couple with the car bunter, and be self coupling at all horizontal angles of presentation to which the pole may be liable, and in so applying the pole that its weight shall be sustained by the car, instead of bearing upon the horses, as illustrated by the model here exhibited. What the inventor claims as his invention is—*First,* the method of applying the pole so that it shall be in position to shackle when brought against the platform at any angle of presentation; and, *second,* so applying the pole that it shall be supported by the car instead of by the horses. The devices described are so simple, and so well illustrated by the model exhibited, as to require no comment from the court. The description and claim have been several times read, and the model exhibited and explained so fully, that I would but waste your time and our own by dwelling on this subject. This model, I repeat, exhibits in a form so simple the claims of the plaintiff that it is readily understood. [Taking the model in hand, the court pointed out its parts and explained it as follows:]

The first claim consists substantially of the open jaw, which affords an opportunity of shackling and unshackling the pole at any angle from the front or side, as you observe. I should say to you that the second claim consists substantially in this brace or pole support, together with its rear connection or support, as described in the patent. You will observe

that this pin is stationary, so that when the pole is unshackled the lower part remains in position; and, as described by Dr. Cresson, the slot in the brace may be run upon the bottom of it, and thus held up steadily, in a horizontal position, while the pin is being run through. In the same way it may be held thus steady while the pin is being withdrawn and the pole unshackled.

The plaintiff, charging the defendants with infringement of his rights under the patent, has brought this suit to recover compensation for the injury which he says has thus been inflicted. That the defendants manufactured cars and poles, using the plaintiff's devices substantially for coupling and supporting the pole, is shown by the testimony, and is not denied. The number of cars and poles to which the devices were so applied is stated to be from 62 to 87 in number. If the case rested here the plaintiff would be entitled to recover. Your verdict, however, in such case, would be for nominal damages only, consisting of six cents, for you would thus have nothing by which to determine that more had been sustained.

The plaintiff, however, has undertaken to satisfy you that he had an established royalty, or license fee, for the use of his patent; which fee he testified is $50 for the devices covered by the two claims. If you find that he had such established general license fee,—that is to say, that he charged and was paid, not in a single instance, but generally, such sum as he states, per car, for the use of his invention,—this would afford a standard or guide whereby the extent of his injury from the defendants' use might be ascertained and measured, in case the patent were found to be valid as respects both the claims before stated. And in such case it would justify you in rendering a verdict in his favor for a sum equal to $50 for each of the several cars and poles manufactured by the defendants with the plaintiff's devices for shackling and supporting the pole. For, while the defendants did not themselves use the car and pole with a device thus upon it, their act of selling the car and pole so manufactured for use by others, would, under the circumstances stated, render them responsible for the use. The plaintiff further testifies that he had a

separate and general license fee for the use of the jaw, which virtually represents, as I have before stated, the first claim of the patent, of $10 per car. There is no evidence of any license fee having been established for the use of the brace, or pole support, with its posterior attachment, or rest, which constitutes the second claim. If, therefore, the patent were found to be valid as respects the first claim, and not as respects the second, the plaintiff's right to recover would be limited to a sum not exceeding $10 per car. On the other hand, if the patent were found to be valid as respects the second claim— the brace, with its support—and not valid as respects the first, then, inasmuch as no license fee has been established for the separate use of this device and its attachments, the plaintiff's right to recover would be limited to nominal damages only, which I have stated to you would be six cents.

Thus far I have spoken of the plaintiff's *prima facie* case alone, and the findings referred to would, I repeat, be justified if the testimony went no further. The defendants, however, assert, and have produced evidence tending to prove—*First*, that in the year 1874, and again in 1875, the plaintiff authorized them to apply the patented devices gratuitously, thereafter, to their cars and poles; and, *second*, that the devices were not new, as respects either of the claims, at the time of the alleged invention by Sampson; and that the patent is, therefore, invalid.

If the first of these allegations is proved to your satisfaction, the plaintiff cannot recover, in any event, for the use of the device by defendants on the cars and poles manufactured after such authorization. If the second allegation is proved, to wit, that the devices—both of them—covered by the claims were not new, but had been known and similarly applied and used before Sampson's alleged invention, the plaintiff cannot recover anything; for, in such case, the patent is void. If one of the claims,—and I invite your attention particularly to these distinctions,—if one of the claims was not new at the time referred to, and the other was, the validity of the patent and the plaintiff's right to recover is limited to the latter—to the one which was new. Thus we

are brought to the real questions involved in the case. The burden of proof respecting them rests on the defendants. The allegations must be proved, or must be disregarded. The presumptions are in favor of the patent as respects the novelty of the invention claimed, and especially so in view of the long time it has run without successful challenge. In this connection, at this time, I will read and answer, before turning to the evidence bearing upon the questions seriously contested, certain points presented by the defendants' counsel. The preceding points having been withdrawn, I read now point 7:

"If the jury believe that substantially the same devices or device that is claimed in the plaintiff's patent was in use for a similar purpose on carriages, wagons, or steam cars before Sampson conceived his device, the application of such old devices to a street car is not patentable, and a patent granted for such application would be void."

If this device or these devices embraced in this patent were previously applied, as suggested in this point, to other vehicles than street cars, for a similar use, the application of them to a street car would not entitle Mr. Sampson to a patent; and in such event his patent is void.

(8.) "The subject-matter of the first claim of the letters patent in the suit is an open jaw, fixed to the front end of a street car, open on both sides as well as at the front, so that the pole of the car can be coupled or shackled with equal facility when directly in front or when presented at any angle on either side."

That is true. It is substantially what the court has already said to you.

(9.) "The subject-matter of the second claim is a brace attached to the under part of the car pole, made with a forked end next the car, adapted to rest upon or fit into any suitable support on the front of the car, so that the weight of the front end of the pole is supported, and the weight thereof taken off the necks of the horses."

The court will affirm that also, adding those words: "As

described in the letters patent, and exhibited by the plaintiff's model."

(10.) "The manner in which the forked brace is supported is not a part of the second claim of the patent. It can be done"—that is, it can be supported, as I understand it—"in various ways, shown by the evidence in this case, provided some substantial support is provided for this forked brace at the fork, so that the car pole may be held in position by it."

I affirm that also, with the addition and qualification, viz.: with any support by which it can be held steadily in a horizontal position for all purposes connected with the use of the pole, including that of shackling, as I have before described to you.

(11.) "If the jury believe that either or both of the devices claimed as new, in the plaintiff's patent, were known to or used by even a single person prior to the date at which Sampson, the patentee, first actually conceived his invention, they will consider that such claim or claims are void, and they will not consider such claim, or both claims, as the case may be, in making up their verdict."

That is true. It is what I have said to you. If you find that either of these claims was old at the time of Sampson's conception, then he was entitled to no patent for such claim. If both were old, he was entitled to no patent at all.

Now, gentlemen, are the allegations, or either of them, the defences set up proved? In support of the first, to-wit, that the plaintiff authorized the use, you have the testimony of Mr. Brill,—not the defendant, but the young man who was upon the stand. Mr. Brill gives you his statement of the plaintiff's interview with him on this subject. You have heard the comments of counsel upon this statement, as well as the answer of the plaintiff, in which he denies the truth and accuracy of Mr. Brill's statements. You will judge whether it is or is not probable that the plaintiff would authorize the defendants to use his devices without looking to them for compensation, and will determine, from all the evidence bearing on the question, whether he did so or not.

If he did, then, as before stated, he cannot recover for the sale of cars thereafter made. In support of the second allegation, which is that these devices were old, you have the testimony of a number of witnesses produced by the defendants, who say, as you have heard, that they saw in use devices substantially identical with the plaintiff's, in different places, which they name, prior to 1853, when Mr. Sampson is alleged to have made the invention embraced in the patent here involved; and have placed before you models or illustrations of the devices to which they refer. If you find that Mr. Sampson's daughters, who testified here, are mistaken respecting the time when the first model was produced, (they fix it, as you will recollect, in 1853,) and that the time at which his invention was made should be placed at a later date, as the defendants' counsel argues, you will then also consider other devices referred to by the defendants' witnesses, as seen in use subsequently to 1853, and down to such time as you find Sampson's discovery to have been made. Are the witnesses here referred to mistaken or inaccurate, either as respects the character of the devices or the time when they were seen in use? You must determine whether the models or illustrations exhibited fairly represent what the witnesses saw; and whether the devices in use, of which they spoke, were substantially identical with the plaintiff's. In considering this, you will remember the testimony of the experts and the comments of counsel. A comparison of the models and illustrations referred to by the witnesses, with the plaintiff's model of his devices, will afford you a pretty safe guide respecting the identity of the devices referred to by the defendants' witnesses, as seen by them in use at the dates to which they testify, with the devices covered by the plaintiff's patent. Can you rely on the accuracy of the witnesses who testify to the prior use of similar devices? Are they or not mistaken or inaccurate in stating what they saw, or the time when they saw it? In this connection you will consider the testimony of the witnesses called by the plaintiff in rebuttal, and the comments of counsel on this evidence. If the testimony of the defendants' witnesses, respecting the devices which they

saw in use prior to the discovery by Sampson, is true, as regards the description of devices, and the time they were seen in use, you will judge whether the devices covered by the plaintiff's patent were new at the time of the alleged invention by Sampson, or whether they were old, as alleged by the defendants.

As respects the open jaw, which virtually constitutes the first claim of the patent, there would seem to be no room for doubt that it was not new, and the plaintiff's counsel, with commendable candor, has declared in your presence that he cannot, in view of the evidence, urge you to find that it was new. Thus the question seems to be narrowed down to the inquiry whether the brace, or pole support, with its posterior connection or rest, which virtually constitutes its second claim of the patent, was new at the time of the alleged discovery by Sampson. I repeat to you, the case, after the close of the testimony and the summing up of counsel, seems to be narrowed down to the question whether or not this device, which constitutes the second claim of the patent, was old at the time of Sampson's alleged discovery. If, therefore, a careful examination of all the evidence satisfies you that this device, which constitutes the second claim, was not new, you will decide this question in the plaintiff's favor, and find that the patent is valid to this extent. If you find that this [referring to the model of it] was also old, then you will find that the patent is invalid as respects both claims. If you do not find that this was old, but conclude that Sampson first invented and applied it, then your verdict, as I have suggested, will be in favor of the plaintiff, and you will treat the patent as valid to that extent. But if the patent is valid only to this extent, (and it seems clear that it is not valid beyond this extent,) then, inasmuch as there is no evidence of a license fee which will enable you to ascertain any sum in which the plaintiff has been damnified or injured on this account, your verdict must be for the plaintiff for nominal damages only. Thus it would seem that in no event, under the evidence, and the plaintiff's position here, can you render a verdict for the plaintiff for anything beyond nominal dam-

ages. If, on the other hand, as I have before stated, you find this device, which constitutes the second claim, also to have been old at the time of the alleged invention by Sampson, and thus find the patent invalid as respects both the claims, your verdict must be for the defendants generally.

The verdict was for plaintiff for six cents damages.